UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-CV-80300-ROSENBERG

NICOLE TUCKER,

  Plaintiff,

v.

THE NATIONAL RAILROAD PASSENGER
CORPORATION a/k/a AMTRAK,

  Defendant.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAYING CASE

**THIS MATTER** is before the Court on Defendant National Railroad Passenger Corporation's ("Amtrak") Motion to Dismiss or Compel Arbitration and Stay Case [DE 13]. The Court has reviewed the Motion, Plaintiff's Opposition [DE 20], and the record. For the reasons discussed below, the Court **GRANTS** the Motion and **STAYS** the case pending arbitration.

### I.   BACKGROUND

Plaintiff Nicole Tucker initiated this negligence action against Defendant on March 4, 2025, and filed her First Amended Complaint (the "FAC") on March 12, 2025. DE 1; DE 7. The FAC alleges that on September 10, 2022, Plaintiff was on Defendant's property and "while navigating stairs that were, unbeknownst to [her] at the time, wet, [she] slipped, fell, and suffered injury." DE 7, ¶ 5. She alleges that the hazardous conditions of the stairs were a result of Defendant's negligence because it, through its agents, "should have been aware that such wet and slippery" conditions created the danger that led to her injury. *Id.* ¶ 10. Plaintiff was at the Amtrak station after her arrival on Amtrak Train 91 with service from Camden, South Carolina to West Palm Beach, Florida. *See id.* ¶ 5; DE 13, ¶ 2; DE 13-1.

In its motion, Defendant explains that Plaintiff purchased her train ticket on August 25, 2022. DE 13, ¶ 2; DE 13-1. To purchase a ticket from Amtrak, either through its website or mobile application, "a customer must affirmatively accept Amtrak's terms and conditions, which includes a mutual agreement to arbitrate any claims between the customer and Amtrak." *Id.* ¶ 3. Specifically, the purchaser must click a box acknowledging that they "have read and agree to the terms and conditions, including the binding arbitration agreement." *Id.* ¶ 4. As pictured below, the terms and conditions are hyperlinked and setoff in blue text to indicate so.



*See id.* Upon clicking the hyperlink, purchasers are directed to a copy of the terms and conditions which, as shown below, notifies readers of the arbitration agreement.

> These terms and conditions contain a binding Arbitration Agreement below. Please read the Arbitration Agreement carefully because it applies mutually to You and Amtrak and requires that you resolve claims and disputes with Amtrak on an individual basis through arbitration and not by way of court or jury trial. By purchasing a ticket for travel on Amtrak, You are agreeing to these terms and conditions and agreeing to the Arbitration Agreement.

DE 13-2, 1. The notice appears at the top of the first page of the terms and conditions and, again, highlights in blue and hyperlinks to the agreement for the purchaser's ease of access. *See id.* It also warns the purchaser that disputes will be resolved "on an individual basis through arbitration and not by way of court or jury trial." *Id.*

The arbitration agreement itself specifically states that the parties agree to arbitrate claims arising from the agreement "without limitation." *Id.* at 59. The agreement also defines the sorts of claims contemplated by the agreement as claims arising from

> [T]he[] Terms and Conditions, breach of contract, tort claims, common law claims, Your relationship with Amtrak, tickets, services and accommodations provided by Amtrak, carriage on Amtrak trains and equipment, any personal injuries (including, but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, wrongful death, survival actions, loss of consortium and/or services, medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress, exemplary or punitive damages arising out of or related to any personal injury), and any claims for discrimination and failure to accommodate, which shall be decided by a single arbitrator through binding arbitration and not by a judge or jury.

*Id.* Finally, the arbitration agreement contains a delegation clause that reserves questions "relating to the validity, applicability, enforceability, unconscionability or waiver" of the agreement to the arbitrator. *Id.* The electronic ticket information associated with Plaintiff's purchase indicates that the terms and conditions check box was clicked on August 25, 2022, at approximately 7:39 pm. *See* DE 13-1, 1.

Based on these terms, Defendant moves to dismiss Plaintiff's FAC or, in the alternative, to compel Plaintiff to binding arbitration and stay the case. DE 13 ¶ 10.

## II.  LEGAL STANDARD

Under the Federal Arbitration Act ("FAA") arbitration clauses are "valid, irrevocable, and enforceable" unless a valid contract defense exists. 9 U.S.C. § 2. The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation modified). "Under this policy, it is the role of courts to rigorously enforce agreements to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)) (citation modified). Because arbitration is a matter of contract, a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018).

To that end, courts follow a two-step inquiry to evaluate a motion to compel arbitration. *Klay*, 389 F.3d at 1200.  First, the Court must determine "whether the parties agreed to arbitrate the dispute." *Id.*  "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation modified).  Second, the Court must determine "whether legal constraints external to the parties' agreement foreclose arbitration." *Klay*, 389 F.3d at 1200 (citation modified).

Once the Court has determined an arbitration agreement is present, it then must decide "whether an . . . agreement creates a duty for the parties to arbitrate the particular grievance." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  These questions are undeniably issues for judicial determination "[u]nless the parties clearly and unmistakably provide otherwise." *Id.*  In other words, "parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1319 (11th Cir. 2024).  One clear indication of a delegation to an arbitrator is an arbitration agreement's incorporation of American Arbitration Association rules, "which themselves provide the arbitrator with authority to decide issues of scope and applicability . . . [as] clear and unmistakable evidence of the parties' intent to arbitrate arbitrability." *Allco Fin. Ltd., Inc. v. Trinar Solar (U.S.) Inc.*, No. 23-CV-81111, 2023 WL 8664865, at *2 (S.D. Fla. Nov. 2, 2023); *accord U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11 Cir. 2014) ("When the parties incorporated into the 2007 contract the rules of the Association, they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator.").

In considering the motion to compel, a court must apply a "summary judgment-like standard." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308 (11th Cir. 2007).  This means that a court

4

can only grant the motion if it concludes that, as a matter of law, the parties agreed to arbitrate the claim and there is no genuine dispute as to a material fact concerning the formation of the agreement. *Simring v. LVNV Funding, LLC*, No. 24-CV-20803, 2025 WL 876935, at *3 (S.D. Fla. Mar. 21, 2025); *but see also Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) ("[T]he FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). A court may also "consider matters outside the pleadings"[1] and should "view all facts in a light most favorable to the nonmovant." *Simring*, 2025 WL 876935, at *3.

### III. DISCUSSION

Here, the Court finds that (1) the parties entered into an enforceable written arbitration agreement and the claims before the Court fall within the scope of the agreement, and (2) the arbitration agreement delegates questions of arbitrability to an arbitrator, not this Court.

**1.      The Parties Agreed to Arbitrate this Dispute.**

Defendant, as discussed above, explained that Plaintiff purchased her ticket online and, to do so, she must have accepted Amtrak's terms and conditions. Those terms and conditions highlighted and hyperlinked to the arbitration agreement. Specifically, the text box where Plaintiff affirmed her acceptance of the terms and conditions noted that the terms "include[e] [a] binding arbitration agreement." Moreover, the terms and conditions apprise Plaintiff that, by purchasing her ticket and checking the box in agreement, she agrees to "resolve claims and disputes with Amtrak on an individual basis through arbitration and not by way of court or jury trial." It further states that Plaintiff agrees to arbitrate claims arising from the agreement "without limitation" and

---

[1] Accordingly, the Court may consider the purchase agreement, terms and conditions, and the incorporated arbitration agreement.

including "tort claims" and "any personal injuries (including but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, . . . medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress . . . arising out of or related to any personal injury)." Thus, the arbitration agreement explicitly covers "all claims, disputes, or controversies, past, present, or future, that otherwise would be resolved in a court of law or before a forum other than arbitration." Additionally, as Plaintiff's single-count FAC sounds in negligence, the agreement facially includes the dispute at issue. *See Allco*, 2023 WL 8664865 at *2.

Plaintiff makes two arguments opposing the arbitration of her claim. First, Plaintiff argues that Defendant failed to sufficiently establish that she was the person who signed the arbitration agreement by clicking the textbox when purchasing her ticket. She argues that Defendant has not established that someone might have done so on her behalf.

However, Defendant does not have the burden to prove that Plaintiff agreed to the terms and conditions. Rather, a "defendant may meet its initial burden to show an agreement to arbitrate merely by attaching a copy of the arbitration agreement purportedly bearing the plaintiff's signature to the motion to compel arbitration." *Simon v. Nat'l Passenger Corp.*, No. 25-CV-2586, 2025 WL 326664, at *4 (M.D. Fla. Jan. 29, 2025) (citation modified). Instead, "when a plaintiff challenges the validity of that signature, a defendant is then required to establish by a preponderance of the evidence that the signature is authentic" *Id.* (citation modified). To sufficiently challenge the validity of a signature to an arbitration agreement, a "plaintiff must: (1) make an unequivocal denial that there was an agreement, and (2) produce evidence to

6

substantiate the denial." *Id.*; *accord Schoendorf v. Toyota of Orlando*, No. 08-CV-767, 2009 WL 1075591, at *4 (M.D. Fla. Apr. 21, 2009) (citation modified).

Here, Plaintiff merely challenges the sufficiency of Defendant's evidence; she did not deny that she signed the agreement, nor did she submit evidence to suggest that she did not sign the agreement. That is insufficient to challenge the enforceability of an arbitration agreement. *Simon*, 2025 WL 326664 at *4 (collecting cases). Moreover, Defendant has provided more than sufficient evidence to suggest that Plaintiff signed the terms and conditions that include the arbitration agreement. For example, the electronic ticket information associated with Plaintiff's purchase shows that the terms and conditions check box was clicked on August 25, 2022, at 7:39 pm. It further indicates that the ticket was purchased in her name and billed to her address. Finally, it demonstrates that the ticket was sent to an email address bearing her first initial and last name. These facts show that it is more likely than not that Plaintiff assented to the terms and conditions when she purchased the ticket and goes beyond Defendant's "initial burden to show an agreement to arbitrate" when it would only have to "attach[] a copy of the arbitration agreement purportedly bearing [Plaintiff's] signature to the motion." *Simon*, 2025 WL 326664, at *4. And this initial showing has not been rebutted by evidence from Plaintiff.

Second, Plaintiff argues that even if a valid arbitration agreement exists, the dispute in this case is not within the scope of the agreement. She argues that the arbitration agreement does not cover an injury suffered at the Amtrak station that did not occur in connection with the purchased ticket for which she signed the arbitration agreement. In other words, Plaintiff contends that because "the property where her injury occurred was not subject to the license granted by the train ticket . . . . her injury claim falls outside of, or is logically exempt[] from the arbitration agreement." DE 20, 4. To hold otherwise, according to Plaintiff, would be to hypothetically allow

7

Amtrak to bind Plaintiff to arbitration "10 years from now" for injuries resulting from a negligently driven train, regardless of "whether or not her claim was related to the ticket purchase[d]" here. *Id.*

The Court rejects this argument. The arbitration agreement specifically includes, "without limitation, . . . claims . . . based upon or related to: . . . tort claims [and] any personal injuries" that "Amtrak may have against [Plaintiff] and claims [Plaintiff] may have against Amtrak." The agreement also includes claims that involve "any personal injuries (including but not limited to, claims for negligence, gross negligence, physical impairment, disfigurement, pain and suffering, mental anguish, . . . medical and hospital expenses, expenses of transportation for medical treatment, expenses of drugs and medical appliances, emotional distress . . . arising out of or related to any personal injury)." Plaintiff's claim is for negligence and she seeks recovery of damages for exactly the injuries that are covered by the agreement. *See* DE 7, ¶ 13 ("Plaintiff . . . was injured in and about her body, suffered aggravation of preexisting [*sic*], pain and suffering, disability, disfigurement, impairment of working ability, mental anguish, loss of enjoyment of life and . . . has incurred medical expenses in the care and treatment of said injuries in the past and will incur them in the future."). Plaintiff's claim against Defendant is explicitly covered by the language of the agreement.

Plaintiff's contentions do not create a genuine dispute of material fact concerning the formation or scope of the arbitration agreement. *Simring*, 2025 WL 876935, at *3 ("Conclusory allegations that lack specific, supporting facts lack probative value for a party opposing a motion to compel arbitration." (citation modified)). And, to the extent there is any doubt, the Court is still required to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Bazemore*, 827 F.3d at 1329. Accordingly, the Court finds that the parties entered

into an enforceable written arbitration agreement and that the claims presented by Plaintiff fall within the scope of the agreement.

**2.      The Arbitration Agreement Delegates Questions of Arbitrability to the Arbitrator.**

Plaintiff further argues that the agreement is unconscionable for substantive and procedural reasons. However, the arbitration agreement contains a delegation clause that states

> [T]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Arbitration Agreement, including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable.

DE 13-2, 59. The agreement also subjects the arbitral proceedings to the rules of the American Arbitration Association. *Id.* Those rules submit questions of arbitrability to the arbitrator. *Allco*, 2023 WL 8664865 at *3 (citing *U.S. Nutraceuticals*, 769 F.3d at 1311). Here, the arbitration agreement commits questions of arbitrability, including unconscionability to the arbitrator as evidenced not only by the clear language of the agreement, but also by the incorporation of the American Arbitration Association rules. *U.S. Nutraceuticals*, 769 F.3d at 1311 ("When the parties incorporated into the 2007 contract the rules of the Association, they clearly and unmistakably contracted to submit questions of arbitrability to an arbitrator."). The agreement clearly and unmistakably delegates the threshold determination of arbitrability, including unconscionability, to the arbitrator. Thus, the Court must give effect to the provision under the FAA. *See Allco*, 2023 WL 8664865 at *3.

Moreover, when, as here, "an arbitration agreement contains a delegation provision— committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). "Courts may not consider

9

challenges to the contract as a whole or even the arbitration agreement but 'challenge[s] [to] the delegation provision specifically.'" *Allco*, 2023 WL 8664865 at *3 (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).  Absent such a challenge, the Court "must treat the arbitration agreement as valid under 9 U.S.C. § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Allco*, 2023 WL 8664865 at *3 (quoting *Rent–A–Center, West, Inc.*, 561 U.S. at 72).  Here, Plaintiff does not challenge the delegation clause specifically, but she challenges the agreement as a whole.  Thus, absent a challenge to the delegation provision, the Court must treat the arbitration agreement as valid under 9 U.S.C. § 2 and enforce it under §§ 3 and 4. *Id.*

## IV. CONCLUSION

Based on the foregoing, Plaintiff must arbitrate her claims against Defendant and the arbitrator will decide whether the Plaintiff's claims are arbitrable.  It is therefore **ORDERED AND ADJUDGED** that:

- Defendants' Motion to Dismiss or Compel Arbitration and Stay Case [DE 13], is **GRANTED**.  Plaintiff is **ORDERED** to arbitrate her claims pursuant to the arbitration agreement between the parties.

- The case is **STAYED**.  All pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.  The Clerk of the Court is directed to **CLOSE THIS CASE FOR STATISTICAL PURPOSES**.  This closure shall not affect the merits of any party's claim.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of August, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE